**ROYCE et al. v. SQUIRE, Collector of Internal Revenue.**

**No. 11736.**

Circuit Court of Appeals, Ninth Circuit.

May 18, 1948.

Rehearing Denied July 12, 1948.

R. T. Jacob and Randall S. Jones, both of Portland, Ore., for appellant.

Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Maurice P. Wolk, Sp. Assts. to Atty. Gen., J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from an adverse judgment in a suit by appellant taxpayers to recover transportation taxes assessed and collected under § 3469 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3469, for the period October 1941, through September of 1944.[1] A claim for refund was

---

[1] The statute (Act of 1941, 55 Stat. 687), so far as pertinent, reads "(a) Transportation. There shall be imposed upon the amount paid within the United States, on or after October 10, 1941, for the transportation, on or after such effective date, of persons by rail, motor vehicle, water, or air, within or without the United States, a tax equal to 5 per centum of the amount so paid. Such tax shall apply to transportation by motor vehicles having a passenger seating capacity of less than ten adult passengers, including the driver, only when such vehicle is operated on an established line."

rejected by the Commissioner and the suit followed.

Taxpayers, under the name of Gray Line Tours, were in the business of transporting passengers by motor vehicle in and in the neighborhood of Seattle. They entered into agreements with several airlines operating out of Seattle in which they undertook to provide transportation by limousine to and from the several airports. The limousines, so far as they figure in this controversy, had a seating capacity of less than ten adult passengers. Fares were paid by the passengers directly to the limousine drivers. The record shows and the court found that when the statute became effective taxpayers increased the fare to cover the tax, and as the tax rates were increased by amendments to the revenue laws like fare increases were made. In the case of inquiries by passengers it was the practice of the drivers to state that the fare paid included the tax. Where, as happened in certain instances, passengers were carried at the expense of an airline, the latter was billed the agreed amount per passenger plus an additional amount separately billed as the tax. The fares and the tax were in all instances maintained as separate items and the amounts reported in the taxpayers' returns for the period are the sum of the monthly total of taxes collected. These sums were not reported as income to taxpayers during any of the period involved.

In the trial court the case was presented on two issues defined in a pre-trial order. The first was whether, in transporting passengers to or from the airports, taxpayers were operating "on an established line" within the meaning of the final sentence of the statute. The second issue was whether or not taxpayers had paid the amounts in suit from their own funds or had otherwise established the right to sue for a refund as delimited by § 3471 of the Internal Revenue Code, 26 U.S.C.A.Int. Rev.Code, § 3471, presently to be adverted to.

■ The holding was against the taxpayers on the first issue. While indicating that the ruling must be adverse to taxpayers on the second issue also, the court reserved decision of that point as unnecessary. Nevertheless, as already noted, it found the fact to be that the taxes in suit were borne by the passengers, not by the taxpayers. Nor was there a showing that the amounts collected to cover the tax were repaid to the passengers or that the consent of any of the latter was obtained to the allowance of the refund here sought. Indeed it was confessedly not possible to make such a showing, the very identity of the many thousands of individuals involved being unknown.

It being plain that taxpayers are in any event barred from recovery by the provisions of the statute last mentioned, we are of opinion that the judgment denying recovery must be affirmed on the second issue without considering the validity of the holding on the first. Subdivision (a) of § 3471 provides "Credit or refund of any overpayment of tax imposed by Subchapter B, Subchapter C, or Subchapter E may be allowed to the person who collected the tax and paid it to the United States if such person establishes, to the satisfaction of the Commissioner, under such regulations as the Commissioner with the approval of the Secretary may prescribe, that he has repaid the amount of such tax to the person from whom he collected it, or obtained the consent of such person to the allowance of such credit or refund."

Taxpayers insist that this statute is inapposite if the facts do not bring them within the reach of the taxing act; and they suggest in the alternative that, for their own future guidance, we ought to pass upon the question ruled on adversely to them below. We disagree. The taxpayers have no financial interest in the monies said to have been erroneously collected. They neither bore the burden of the tax, refunded the amounts collected, nor obtained authority to sue from those who did bear the burden. They are in any event without standing to sue. Sharp & Dohme v. United States, 3 Cir., 144 F.2d 456, and authorities there cited.

■ Nor are we at liberty to grant the declaratory relief it has been suggested we ought to give. The Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, excludes from the power to grant relief of that nature controversies with respect to federal taxes.

Affirmed.